## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

|  |  |
|---|---|
| FARMERS INSURANCE EXCHANGE, TRUCK INSURANCE EXCHANGE, FIRE INSURANCE EXCHANGE, MID-CENTURY INSURANCE COMPANY, and FARMERS NEW WORLD LIFE INSURANCE COMPANY | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) **JURY TRIAL DEMANDED** ) ) |
| DAVID SCOTT GORDON, 153 Alabama Street Alexandria City, AL 35010 | ) ) ) ) ) |
| and | ) ) |
| CORNERSTONE INSURANCE & FINANCIAL GROUP, INC. c/o David Scott Gordon, Registered Agent 153 Alabama Street Alexandria City, AL 35010 | ) ) ) ) ) ) |
| Defendants. | ) ) |

Case No. 3:19-cv-163-WKW-GMB

---

### COMPLAINT FOR INJUNCTIVE RELIEF AND MONETARY DAMAGES

---

COME NOW Plaintiffs Farmers Insurance Exchange, Truck Insurance Exchange, Fire Insurance Exchange, Mid-Century Insurance Company and Farmers New World Life Insurance Company (collectively "Farmers" or "Plaintiffs"), and for their Complaint seeking injunctive relief and monetary damages against Defendants David Scott Gordon and Cornerstone Insurance & Financial Group, Inc. state and allege as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiffs Mid-Century Insurance Company and Farmers New World Life Insurance Company are foreign corporations registered to do business in the State of Alabama.

2.      Plaintiffs Farmers Insurance Exchange, Truck Insurance Exchange and Fire Insurance Exchange are inter-insurance exchanges organized and existing under the laws of the State of California, have their principal place of business in California and are licensed to do business in the State of Alabama.

3.      Defendant David Scott Gordon ("Gordon") is an individual who, upon information and belief, currently resides within the State of Alabama.  Gordon is a former insurance agent of Farmers who previously operated a Farmers agency, David Scott Gordon Insurance Agency, Inc., at 153 Alabama Street, Alexander City, Alabama 35010.

4.      Defendant Cornerstone Insurance & Financial Group, Inc. ("Cornerstone") is an Alabama corporation whose principal is David Scott Gordon and which may be served through its registered agent, David Scott Gordon, at 153 Alabama Street, Alexandria City, Alabama 35010.

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367(a).  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Gordon and Cornerstone reside in this District and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

6.      Farmers is in the business of selling and servicing insurance policies, including automobile, homeowner's, commercial and life insurance, to customers through exclusive independent contractor insurance agents.  *See* Declaration of Bruce Selin (hereafter, "Selin Decl.") attached as **Exhibit A**, ¶ 3.

7.      Significant investments have been made in building Farmers' business, reputation and customer relationships through its agency force, which is supported with training, customer service, advertising, promotion and other initiatives.  *See* Exhibit A, Selin Decl., ¶ 4.

8.      Farmers' independent contractor insurance agents may not promote or sell competitive insurance products from other insurers for all classes and lines of insurance underwritten by Farmers.  *See* Exhibit A, Selin Decl., ¶ 5.

9.      Farmers' most valuable assets are its relationships with its customers (i.e. policyholders) and its customer information (including premium amounts, type of insurance, and expirations), which, if made known to Farmers' competitors, would give them a significant competitive advantage against Farmers.  *See* Exhibit A, Selin Decl., ¶ 6.

**I.      FARMERS' CUSTOMER INFORMATION ARE TRADE SECRETS**

10.      Farmers has spent a substantial amount of time, labor and capital in developing, maintaining and updating a proprietary database of trade-secret pricing, expirations and other customer information and customer relationships.  *See* Exhibit A, Selin Decl., ¶ 10.

11.      Farmers' trade-secret customer data is detailed and extensive, far more than just the names or publicly available information of Farmers' customers.  Farmers' compiled data includes information relating to those customers' insurance needs, such as the types of insurance coverage, policy limits, claims history, the type of car(s) owned, the details of homes and other insured properties, eligibility for discounts, prospective pricing and the date the insurance policies expire.  *See* Exhibit A, Selin Decl., ¶ 11.

12.      Farmers' trade-secret customer data also includes other private information about customers, such as their past claims history, employment and financial condition.  *See* Exhibit A, Selin Decl., ¶¶ 7, 11.

3

13.     Although certain limited contact information might be publicly available for some Farmers' customers, such as published home telephone numbers, the overwhelming majority of the information referenced above is not publicly available.  Rather, the confidential, detailed customer data gathered and compiled by Farmers and its insurance agency force is available only to Farmers independent contractor insurance agents and a limited number of Farmers' employees.  There are no publicly available lists of Farmers' customers.  *See* Exhibit A, Selin Decl., ¶ 7.

14.     Farmers derives substantial economic value from preserving its customer information as trade secrets.  Competitors can far more easily solicit Farmers' customers to change insurance providers when those competitors unfairly appropriate Farmers' trade-secret customer information.  Competitors use that trade-secret customer information to attempt to solicit Farmers' customers without having to make the investment of time, labor and capital that Farmers and its insurance agency force made to compile the information.  *See* Exhibit A, Selin Decl., ¶ 8.

15.     Farmers has adopted substantial measures to preserve the secrecy of trade-secret customer information by instituting protective measures designed to prevent such information from reaching competitors or any outside third party.  *See* Exhibit A, Selin Decl., ¶ 9.

16.     Farmers maintains its customer information and policy expirations on a password and user-ID protected system as part of Farmers' Agency Dashboard.  As part of that system, Farmers provides independent contractor insurance agents with a "view" in Farmers' Electronic Customer Management System ("eCMS") that is unique to each independent contractor insurance agent and only available for access by that individual insurance agent and a limited number of Farmers employees.  The eCMS view provides the insurance agents (and their

authorized staff) with limited access to Farmers' customer information.  *See* Exhibit A, Selin Decl., ¶ 12.

17.     Independent contractor insurance agents are able to create user-IDs for their staff and are directly responsible for ensuring that all staff members abide by the written practices and procedures set forth by Farmers.  *See* Exhibit A, Selin Decl., ¶ 12.

18.     At the time of termination of an agent's appointment agreement with Farmers, the access to eCMS of that independent contractor insurance agent and his/her staff is terminated, and their user ID and password combination is no longer valid.  *See* Exhibit A, Selin Decl., ¶ 15.

19.     Farmers protects its confidential trade-secret customer information by requiring each employee or independent contractor insurance agent who will access the data to agree to use Farmers' trade-secret customer information only in the course of his/her employment or Farmers agency and to promise not to divulge Farmers' information to third parties or to sue this information in any way detrimental to Farmers.

20.     Farmers also protects its trade-secret customer information by issuing and enforcing company policies regarding access to and preservation of confidential customer information and by maintaining copies of those policies on the Agency Dashboard system, the system through which agents are able to access eCMS.

21.     Each time an independent contractor insurance agent accesses Farmers' proprietary system through the Agency Dashboard, that user agrees to abide by an additional and separate "Legal Disclaimer" reflecting that this information is "proprietary, confidential and trade secret information of Farmers" and that use of the information "is restricted to the business of Farmers and your Farmers agency."

22.     Farmers also periodically reminds its independent contractor insurance agents of Farmers' confidentiality policies via bulletins and other communication.

## II.   FARMERS' AGENT APPOINTMENT AGREEMENT WITH GORDON

23.    On or about April 16, 1999, Farmers and Gordon entered into an Agent Appointment Agreement whereby Gordon accepted appointment by Farmers as an agent of and for Farmers in the State of Alabama to sell insurance for Farmers.

24.    On or about May 1, 2017, Farmers and Gordon entered into a second Agent Appointment Agreement and an accompanying Addendum to Agent Appointment Agreement (collectively hereafter, the "Agreement"), which superseded and replaced Gordon's 1999 Agent Appointment Agreement.  A copy of the Agreement is attached as **Exhibit B**.

25.    Pursuant to paragraph E.1. of the Agreement, it could be terminated at any time, with or without cause, by either Gordon or Farmers upon three months written notice.  *See* Exhibit B, ¶ E.1.

26.    Pursuant to paragraph H of the Agreement, in the event Gordon's Agreement was terminated, and subject to certain other conditions set forth in the Agreement, Farmers agreed to pay Contract Value to Gordon in an amount to be calculated in the manner set forth in the Agreement.  *See* Exhibit B, ¶ H.

27.    The Agreement provided that Contract Value would be paid in three installments at not less than six-month intervals, absent a contract breach by Gordon.  The Contract Value payment schedule is intended to assure that former agents comply with their post-termination obligations under the Agreement.  *See* Exhibit B, ¶ H.

28.    Pursuant to paragraph K of the Agreement, Gordon agreed to certain post-termination obligations as follows:

> 1. To accept payment or tender of any Contract Value due under the Agreement;

> * * *

6

4. For a period of one year following the effective date of the termination of the Agreement, to not directly or indirectly solicit, accept, or service the insurance business of any Farmers policyholder of record with Gordon's agency;

5. Not to use at any time before or after the termination date of the Agreement the confidential information and/or trade secrets of Farmers for any purpose not related to Gordon's duties under the Agreement.

*See* Exhibit B, ¶ K.

29.     Pursuant to paragraph L of the Agreement, Gordon acknowledged that "all guidelines, lists and other business, policy, and/or customer information of any kind relating to [Farmers]" constitute trade secret and confidential information of Farmers and will at all times remain the property of Farmers.  Gordon agreed that such information would not be used or used or divulged, directly or indirectly, in any way detrimental to Farmers and would be returned immediately to Farmers upon termination of the Agreement.  Gordon expressly agreed he would not retain any Farmers' property or information following termination of the Agreement.  *See* Exhibit B, ¶ L.

### III.     THE TERMINATION OF GORDON'S AGREEMENT WITH FARMERS

30.     On May 21, 2018, Gordon gave notice to Farmers that effective August 31, 2018, Gordon was resigning his Agreement with Farmers.  A copy of Gordon's notice letter is attached as **Exhibit C**.

31.     On June 5, 2018, Farmers acknowledged receipt of Gordon's notice of intent to terminate the Agreement and concurred that his Agreement with Farmers would terminate effective August 31, 2018.  A copy of Farmers' letter is attached as **Exhibit D**.

32.     In accordance with paragraphs H and I of the Agreement, Farmers requested the return of all information relating to Farmers' insureds and reminded Gordon of the obligations under Paragraph H of the Agreement that for a period of one year following tender of Contract

Value under the Agreement, Gordon was not, either directly or indirectly, to solicit, accept or service the insurance business of any Farmers' policyholder of record in Gordon's Farmers Agency as of the date of termination of the Agreement. *See* Exhibit D.

33.     Gordon's Agreement with Farmers terminated effective August 31, 2018.

## IV.     GORDON'S MISAPPROPRIATION OF FARMERS' CUSTOMER INFORMATION

34.     In April 2018, Gordon began running reports on eCMS for all of the policyholders he serviced for Farmers. Gordon's activity in April 2018, and again in August 2018, was highly unusual for his agency. *See* Exhibit A, Selin Decl., ¶¶ 17-21.

35.     During the period September 2017 through March 2018, Gordon ran a total of three reports on eCMS. *See* Exhibit A, Selin Decl., ¶ 18.

36.     During April 2018, the month prior to providing notice to Farmers of his intent to terminate his Agreement, Gordon and his staff ran a total of 37 reports on eCMS, including, but not limited to, an All Accounts report, an Agency Email Address Book report, various reports for auto policies with and without home policies, email lists, and numerous Active Policy Retention Detail reports. Gordon also printed a number of those reports. *See* Exhibit A, Selin Decl., ¶ 19.

37.     In May, June and July 2018, Gordon again did not run a single report on eCMS. *See* Exhibit A, Selin Decl., ¶ 20.

38.     In August 2018, Gordon's last month as an independent contractor insurance agent for Farmers, Gordon and his staff ran a total of 29 reports on eCMS. On August 3, 2018, Gordon ran a report of Accounts by Inception several times and created a total of 341 mailing labels from the report. On August 6 and 7, Gordon ran the Accounts by Inception report numerous times and created more than 500 additional mailing labels from those reports. Also on August 7, Gordon ran several reports for Accounts by Pay Plan, from which he created an additional 25 mailing labels. *See* Exhibit A, Selin Decl., ¶ 21.

39.     Gordon also engaged in wholesale printing of Farmers' customer information prior to his departure.  During the period September 2017 through June 2018, Gordon and his staff accessed the Farmers Express Print Center, on average, approximately 18 times per month.  Conversely, in July 2018, the month immediately preceding the termination of Gordon's Agreement, Gordon and his staff accessed the Express Print Center an astounding 174 times.  *See* Exhibit A, Selin Decl., ¶ 22.

40.     These reports provided access to Farmers' confidential, trade-secret customer information about individual policyholders, including customer names, addresses, phone numbers, policy expiration dates, types of insurance (home, auto, boat, etc.), vehicle information, details about the home, and the current premium with Farmers.  Through links on these reports, Gordon had access to each individual policyholder's private customer information and prospective premium information.  *See* Exhibit A, Selin Decl., ¶ 23.

## V.     GORDON BEGINS SELLING INSURANCE WITH HIS NEW COMPANY

41.     On or about July 10, 2018, documents were filed with the Alabama Secretary of State's office changing the name of Gordon's insurance agency from David Scott Gordon Insurance Agency, Inc. to Cornerstone Insurance & Financial Group, Inc. (hereafter, "Cornerstone").  A copy of the Alabama SOS record is attached as **Exhibit E**.

42.     Immediately following the termination of his Agreement with Farmers, Gordon began selling insurance under the new company name of Cornerstone at 153 Alabama Street, Alexander City, AL 35010.  This is the very same address from which Gordon operated his Farmers agency.  A copy of the Cornerstone website is attached as **Exhibit F**.

43.     When Gordon's Agreement with Farmers was terminated on August 31, 2018, he left a Farmers book of business of 1,626 insurance policies in force.  By December 2018, the number of Farmers policies in force from Gordon's former agency had dropped to 1,333.

44.     Upon information and belief, Gordon and Cornerstone have directly or indirectly solicited, accepted, and/or serviced the insurance business of numerous Farmers' policyholders of record with Gordon's former Farmers agency.

45.     Upon information and belief, Gordon has used and or disclosed the confidential and proprietary customer information of Farmers for the purpose of, directly or indirectly, soliciting, accepting, and/or servicing the insurance business of numerous Farmers' policyholders of record with Gordon's former Farmers agency.

46.     On or about January 22, 2019, Farmers issued a letter to Gordon, reminding him that he was not, directly or indirectly, to solicit, accept or service the insurance business of any Farmers policyholders per the terms and conditions of his Agreement with Farmers and requesting confirmation from Gordon that he has returned to Farmers all manuals, lists and records of any kind pursuant to his commitments under paragraph I of the Agreement.

47.     Farmers has made demand on Gordon to comply with the provisions of the Agreement by, among other things, returning Farmers' confidential trade-secret customer information to Farmers.  Gordon has failed, refused and neglected to comply with the terms and conditions of the Agreement.

48.     Farmers has and will continue to suffer irreparable harm as a result of Gordon's breach of the Agreement and misappropriation of Farmers' trade secret information, including Farmers' customer information and expirations.

## COUNT I
### MISAPPROPRIATION OF TRADE SECRETS (18 U.S.C. § 1832, *et seq.*)
### (against Gordon)

49.     Farmers realleges and incorporates by reference paragraphs 1 through 48 as if fully set forth herein.

50.     The facts pleaded above constitute actual and threatened misappropriation of trade secrets by Gordon in violation of the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1832, *et seq.*

51.     Farmers' trade secrets, including the contact and confidential pricing, financial and account information of Farmers' customers, are subject to reasonable efforts by Farmers to maintain their secrecy and/or confidentiality.  Farmers' customer information is not generally known or available to the public.

52.     Farmers' confidential customer information is considered a trade secret under the DTSA because Farmers derives independent economic value from this information not being generally known to the public, the information is not readily ascertainable by proper means by persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy.

53.     Gordon is misappropriating Farmers' trade secrets by failing to return the customer information obtained by him prior to the termination of his Agreement.

54.     The economic value of the trade secrets is over $75,000.

55.     Farmers faces an immediate threat of continuing irreparable harm, for which Farmers lacks an adequate remedy at law, from Gordon's ongoing misappropriation of Farmers' trade secret customer information.

56.     Unless Gordon is preliminarily and permanently enjoined from the foregoing conduct, Farmers will be irreparably harmed by:

    a.      Disclosure of trade secrets, customer lists, and other confidential information that is solely the property of Farmers and its customers;

    b.      Use of Farmers' trade secrets to solicit customers on behalf of competitors and to disparage Farmers and Farmers' services in an attempt to convince Farmers' customers to transfer their business to competitors;

      c.      Loss of confidentiality of clients' records and financial dealings, loss of confidence and trust of clients, loss of goodwill and loss of business reputation; and

      d.      Potential future economic loss, which is presently incalculable.

57.      The threatened harm to Farmers is immediate.

58.      Farmers has no adequate remedy at law, as the damage in terms of money for the future loss of the business of its insureds resulting from the conduct by Gordon cannot be measured or calculated.

59.      No damage to Gordon will result from granting the injunctive relief Farmers seeks. Gordon can continue to earn a living, but must not use the confidential, proprietary and trade secret information relating to Farmers' insureds.

60.      The threatened harm to Farmers is greater should injunctive relief not be ordered in that Gordon is in violation of the terms of the Agreement, in possession of Farmers' confidential, proprietary and trade secret information, and is continuing to breach the terms of the Agreement by failing to return Farmers' information.

61.      The public has an interest in seeing that contractual provisions, including provisions regarding the use and disclosure of confidential, proprietary and trade secret information and non-solicitation, are enforced.

## COUNT II
## BREACH OF CONTRACT
### (against Gordon)

62.      Farmers realleges and incorporates by reference paragraphs 1 through 61 as if fully set forth herein.

63.      The Agreement (attached as Exhibit B) is an enforceable contract between Farmers and Gordon, and Farmers has fully complied with all of its terms.

64.     Gordon has breached the Agreement in that he has failed and refused to return Farmers' information regarding its insureds upon termination of the Agreement.

65.     As a direct and proximate result of Gordon's breach, Farmers has incurred damages.

66.     Gordon's breach continues to happen, and Farmers has no adequate remedy at law to stop and fully compensate future, continuing losses.

**COUNT III**
**VIOLATION OF THE ALABAMA TRADE SECRETS ACT (ALA. Code § 8-27-1)**
**(against Gordon)**

67.     Farmers realleges and incorporates by reference paragraphs 1 through 66 as if fully set forth herein.

68.     The facts pleaded above constitute actual and threatened misappropriation of trade secrets by Gordon in violation of the Alabama Trade Secrets Act ("ATSA"), Ala. Code § 8-27-1, *et seq.*

69.     Farmers' trade secrets, including the contact and confidential pricing, financial and account information of Farmers' customers, are intended for use in Farmers' trade or business.

70.     Farmers' customer information is included or embodied in a compilation of data maintained by Farmers in its proprietary eCMS database.

71.     Farmers' customer information is not generally known or available to the public and is not generally known or readily ascertainable by proper means by persons who could obtain economic value from its disclosure or use.

72.     Farmers' confidential customer information is the subject of reasonable efforts to maintain its secrecy.

73.     Farmers derives significant independent economic value from its confidential customer information not being generally known to the public

74.     Gordon is misappropriating Farmers' trade secrets by failing to return the customer information obtained by him prior to the termination of his Agreement.

75.     Farmers faces an immediate threat of continuing irreparable harm, for which Farmers lacks an adequate remedy at law, from Gordon's ongoing misappropriation of Farmers' trade secret customer information.

76.     Unless Gordon is preliminarily and permanently enjoined from the foregoing conduct, Farmers will be irreparably harmed by:

    a.    Disclosure of trade secrets, customer lists, and other confidential information that is solely the property of Farmers and its customers;

    b.    Use of Farmers' trade secrets to solicit customers on behalf of competitors and to disparage Farmers and Farmers' services in an attempt to convince Farmers' customers to transfer their business to competitors;

    c.    Loss of confidentiality of clients' records and financial dealings, loss of confidence and trust of clients, loss of goodwill and loss of business reputation; and

    d.    Potential future economic loss, which is presently incalculable.

77.     The threatened harm to Farmers is immediate.

78.     Farmers has no adequate remedy at law, as the damage in terms of money for the future loss of the business of its insureds resulting from the conduct by Gordon cannot be measured or calculated.

79.     No damage to Gordon will result from granting the injunctive relief Farmers seeks. Gordon can continue to earn a living, but must not use the confidential, proprietary and trade secret information relating to Farmers' insureds.

80.     The threatened harm to Farmers is greater should injunctive relief not be ordered in that Gordon is in violation of the terms of the Agreement, in possession of Farmers'

14

confidential, proprietary and trade secret information, and is continuing to breach the terms of the Agreement by failing to return Farmers' information.

81.     The public has an interest in seeing that contractual provisions, including provisions regarding the use and disclosure of confidential, proprietary and trade secret information and non-solicitation, are enforced.

**COUNT IV**
**BREACH OF FIDUCIARY DUTY**
**(against Gordon)**

82.     Farmers realleges and incorporates by reference paragraphs 1 through 81 as if fully set forth herein.

83.     By virtue of his prior status as an insurance agent for Farmers, Gordon operated as a fiduciary with respect to Farmers' business, owed Farmers the fiduciary duties of loyalty and care and was required to keep the confidential and business secrets of Farmers inviolate.

84.     Gordon has breached his fiduciary duties by engaging in misconduct that served his own self-interests and the interests of others rather than the interests of Farmers and has acted in a manner inconsistent with the best interests of Farmers – to wit, misappropriating the trade secret customer information of Farmers in order to unfairly compete against Farmers.

85.     As a direct and proximate result of Gordon's breach of fiduciary duties, Farmers has incurred damages.

86.     The actions of Gordon were willful and malicious and demonstrate a complete indifference to or a conscious disregard for the rights of Farmers entitling Farmers to an award of punitive damages.

87.     Gordon will continue to breach his fiduciary duties to Farmers unless restrained by this Court.

## COUNT V
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP
### (against Gordon and Cornerstone)

88.     Farmers realleges and incorporates by reference paragraphs 1 through 87 as if fully set forth herein.

89.     An insurance contract exists between Farmers and each of its insureds, including those insureds who were serviced by Gordon when he was a Farmers agent.  There is also an expectancy that such insureds would continue to do business with Farmers in light of their ongoing business relationship.

90.     Gordon and Cornerstone had actual knowledge of these insurance contracts and business relationships between Farmers and its insureds by virtue of Gordon's prior status as an insurance agent for Farmers.

91.     Farmers has a valid business expectancy and contractual relations in connection with each of its insureds with whom, upon information and belief, Gordon and Cornerstone have engaged in communications for the purpose of soliciting their business and otherwise competing with Farmers.

92.     Upon information and belief, Gordon and Cornerstone intentionally interfered with Farmers' insurance contracts and business expectancies with respect to Farmers' insureds by, directly or indirectly, soliciting their business away from Farmers.

93.     Gordon and Cornerstone are not parties to Farmers' insurance contracts with its insureds and had no justification for their intentional interference.

94.     Farmers has suffered damages as a result of the unlawful conduct of Gordon and Cornerstone.

95.     The actions of Gordon and Cornerstone were willful and malicious and demonstrate a complete indifference to or conscious disregard for the rights of Farmers, entitling Farmers to an award of punitive damages.

96.     But for an exercise of the equitable powers of this Court, Farmers will be irreparably injured and harmed by Gordon's and Cornerstone's tortious interference with business relationship.

97.     Gordon and Cornerstone will continue to tortiously interfere with Farmers' insurance contracts and business expectancies unless restrained by this Court.

## COUNT VI
## UNJUST ENRICHMENT
### (against Gordon and Cornerstone)

98.     Farmers realleges and incorporates by reference paragraphs 1 through 197 as if fully set forth herein.

99.     As a result of their misconduct as alleged in this Complaint, Gordon and/or Cornerstone have been unjustly enriched through the continued possession and use of information relating to Farmers' insureds and the solicitation, switching and converting of individual Farmers insureds to other insurance carriers.

100.    The retention of these benefits by Gordon and/or Cornerstone under the circumstances is inequitable and, therefore, Gordon and Cornerstone should be required to disgorge their wrongful gains.

101.    The actions of Gordon and Cornerstone were willful and malicious and demonstrate a complete indifference to or a conscious disregard for the rights of Farmers entitling Farmers to an award of punitive damages.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and against Defendant David Scott Gordon as follows:

17

a.   Granting preliminary and permanent injunctive relief enjoining and restraining Gordon from directly or indirectly soliciting, accepting, and/or servicing the insurance business of any policyholder of record in Gordon's Farmers Agency as of August 31, 2018 for a period of one year;

b.   Granting preliminary and permanent injunctive relief enjoining and restraining Gordon from using, disclosing or divulging Farmers' customer information, including but not limited to documents or files containing Farmers' confidential customer information, in any way detrimental to Farmers;

c.   Ordering Gordon to return to Farmers all confidential, proprietary and trade secret information belonging to Farmers that is still within his possession, including all information regarding Farmers' insureds in whatever form it may exist;

d.   Ordering Gordon to turn over his computer and external storage devices to Farmers for forensic examination to determine the full extent of his use of Farmers' customer information and to delete any documents containing Farmers' information;

e.   Granting Farmers damages for Gordon's unlawful conduct, including both the profits Farmers lost as a result of any such conduct and any unjust enrichment gained by Gordon;

f.   Granting Farmers exemplary damages; and

g.   Awarding Farmers its reasonable attorneys' fees and costs.

Respectfully submitted,

Edward F. Harold
AL Bar No. asb-0669-d55h
FISHER & PHILLIPS, LLP
201 St. Charles Avenue, Suite 3710
New Orleans, LA 70170
(504) 522-3303 TEL
(504) 529-3850 FAX
Attorney for Plaintiffs